**Charles M. BROHM, M.D., Plaintiff,**

v.

**JH PROPERTIES, INC. d/b/a Jewish Hospital Shelbyville, Defendant.**

Civil Action No. 3:96CV–151–S.

United States District Court,
W.D. Kentucky

Oct. 10, 1996.

Oliver H. Barber, Jr., Rebecca L. Rudd, Gittleman & Barber, Louisville, KY, for plaintiff.

Jon L. Fleischaker, Caroline Miller Oyler, Wyatt, Tarrant & Combs, Louisville, KY, for defendant.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on a motion for summary judgment by the defendant, JH Properties, Inc. d/b/a Jewish Hospital Shelbyville ("the Hospital"). The plaintiff, Dr. Charles M. Brohm, filed suit against the Hospital for disability discrimination under the Kentucky Civil Rights Act, KRS 344.010 *et seq.*, alleging that he was wrongfully terminated from his employment as Director of Anesthesiology at Jewish Hospital Shelbyville because of a disability. Dr. Brohm also asserted a claim under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). We find that both of Dr. Brohm's claims fail as a matter of law. Therefore, summary judgment will be granted in favor of the Hospital and Dr. Brohm's complaint will be dismissed with prejudice.

### FACTS

None of the facts detailed herein is disputed by the parties. Jewish Hospital Shelbyville hired Dr. Brohm as Director of Anesthesiology in January 1994 under a three-year employment contract. Dr. Brohm held this position until he was terminated on September 1, 1995. Neither party disputes the fact that Dr. Brohm was terminated for sleeping on the job. *See* Def.'s memorandum in support of its motion for summary judgment at 2; Pl.'s memorandum in response at 1.

On June 23, 1995, Tim Jarm, President and CEO of Jewish Hospital Shelbyville, met with Dr. Brohm to discuss a complaint against Dr. Brohm by a hospital employee. Wanda Moore, the Hospital's operating room manager, complained that Dr. Brohm had physically confronted and intimidated her in the anesthesia office at the Hospital, and that a "verbal confrontation" ensued. At this June 23 meeting, Jarm suspended Dr. Brohm pending an investigation of the grievance.

On June 27, 1995, Jarm again met with Dr. Brohm to notify him that the Hospital was exercising its option to terminate employment with 120 days' written notice. *See* Exh. 3 to Brohm Depo. The employment contract provided for termination of employment without cause "upon giving one hundred twenty (120) days' prior written notice of intent to terminate." At the meeting, Jarm also confronted Dr. Brohm with reports that Dr. Brohm was sleeping during surgical procedures while administering anesthetics. Dr. Brohm denied sleeping, and responded that he had a sinus problem and that clearing his sinuses could be interpreted as snoring.

In August 1995, Jarm received complaints from several people working at the Hospital, including three physicians, who observed Dr. Brohm sleeping during four different surgical procedures in which he was the anesthesiologist of record. Jarm personally verified with each of these physicians that Dr. Brohm had indeed been asleep, sometimes even snoring. *See* Exh. B, C, D, to Jarm Affid. On August 31, 1995, Jarm informed Dr. Brohm of the documented occurrences of his sleeping on the job, and again suspended Dr. Brohm. At this meeting, Dr. Brohm suggested the possibility that he might be suffering from sleep apnea. On September 1, 1995, Jarm fired Dr. Brohm for sleeping during surgical procedures while administering anesthetics. During the next week, Dr. Brohm visited a physician and was diagnosed with sleep apnea.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), the Supreme Court noted that Rule 56(c) asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Summary judgment is appropriate where there is no genuine issue of material fact in the case which requires a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### *DISCUSSION*

■ The dispute in this case centers on *why* Dr. Brohm was fired. Dr. Brohm argues that he was fired because of a disability. The Hospital argues that Dr. Brohm was fired because he was sleeping on the job in plain violation of hospital rules and good medical practice. To succeed on his disability discrimination claim, Dr. Brohm must establish that Jewish Hospital Shelbyville fired him *because of his disability*.[1] The facts make it clear that Dr. Brohm cannot possibly make out a prima facie case of disability discrimination. The Hospital fired Dr. Brohm for his specific conduct—sleeping on the job—and not because of a disability manifested by the sleeping. Because his firing was not unlawful, Dr. Brohm was not entitled to the FMLA's medical leave requirement.

KRS 344.040 provides, in pertinent part:

It is an unlawful practice for an employer:

(1) To ... discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment ... because the person is a qualified individual with a disability ...

The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") mirrors this language. The Sixth Circuit has stated that "[t]he ADA parallels the protection of the Rehabilitation Act," 29 U.S.C. § 701, *et seq.*, which forbids discrimination on the basis of disability under any program or activity receiving federal assistance. *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n. 2 (6th Cir.1995). Thus, in order to prevail on his KRS 344.040 claim, Dr. Brohm must show that the Hospi-

---

1. The parties assume, for purposes of this summary judgment motion only, that (1) Dr. Brohm has sleep apnea, (2) that sleep apnea is a "disability" under the Kentucky Civil Rights laws, and (3) that Dr. Brohm is "otherwise qualified" for his position as an anesthesiologist. Because it is unnecessary for us to address these issues in deciding this case, we express no opinion as to the correctness of these assumptions.

tal discriminated against him "solely by reason of" his disability. *Id.* at 846.

It is clear in this case that Dr. Brohm was fired for sleeping, not for having sleep apnea. In *Maddox v. Univ. of Tenn,* 62 F.3d 843 (6th Cir.1995) (Rehabilitation Act suit), the plaintiff was fired after being arrested for drunken driving. Maddox claimed he was fired because of a disability—"alcoholism." Maddox argued that his drunken driving was a "causally connected manifestation of the disability of alcoholism." *Id.* at 846. The University argued that Maddox was fired, not for his alcoholism, but for his misconduct; i.e., drunken driving. The district court agreed with the University:

> It cannot be denied in this case, Mr. Maddox was charged with ... [drunken driving] which would not be considered socially acceptable by any objective standard. The affidavit testimony ... is clear on the point that it was this specific conduct, not any condition to which it might be related, which provoked the termination of Mr. Maddox's employment.

*Id.* at 846. In affirming summary judgment for the University, the Court of Appeals distinguished firing because of "unacceptable misconduct" and firing "because of the disability." *Id.* at 847. The Sixth Circuit wrote:

> Employers subject to the Rehabilitation Act and ADA must be permitted to take appropriate action with respect to an employee on account of egregious or criminal conduct, regardless of whether the employee is disabled.

*Id.* at 848.

Almost every other circuit agrees with *Maddox* in ruling for employers under these circumstances. *See, e.g., Williams v. Widnall,* 79 F.3d 1003 (10th Cir.1996) (affirming summary judgment; alcoholic employee made threats to co-workers); *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995) (affirming dismissal; employee terminated for failing to control diabetes); *Collings v. Longview Fibre Co.,* 63 F.3d 828 (9th Cir.1995) (affirming summary judgment; employee terminated because of drug-related misconduct); *Little v. F.B.I.,* 1 F.3d 255, 259 (4th Cir.1993) (affirming dismissal; employee

terminated for being intoxicated on duty). *See also Newland v. Dalton,* 81 F.3d 904, 906 (9th Cir.1995) ("[F]irings precipitated by misconduct rather than any handicap do not violate the Act."). Only the Second Circuit disagrees. *See Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511 (2d Cir. 1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (misconduct caused by disability is protected). The Sixth Circuit specifically rejected *Teahan* in *Maddox:* "At bottom, we concluded that the analysis of the district court is more in keeping with the purposes and limitations of the respective Acts, and therefore, we decline to adopt the Second Circuit's reasoning in *Teahan.*" 62 F.3d at 848.

In this case, the Hospital concluded that Dr. Brohm's sleeping during surgical procedures placed his patients and the Hospital in grave danger. The firing was based on actual, documented reports from several occasions where Dr. Brohm was asleep during surgery. In no way can the Hospital's decision be characterized as based on an alleged disability; it was based on Dr. Brohm's slumber. *See, e.g., EEOC v. Kinney Shoe Co.,* 917 F.Supp. 419, 429–30 (W.D.Va.1996) (termination of epileptic salesman because of "seizures in store, sales floor and stock room" did not violate ADA because Kinney acted on a record of harmful behavior directly attributable to the plaintiff's epilepsy, and not on "generalized assumptions about epileptics."); *Bussey v. West,* 86 F.3d 1149, 1996 WL 293209 (4th Cir. June 4, 1996) (unpublished decision) (employee whose multiple sclerosis made her irritable was not fired because of her disability).

Dr. Brohm attempts to create a genuine issue of material fact in this case by arguing that he told Jarm of the possibility that he had sleep apnea at the August 29 meeting which preceded his September 1 termination. But the fact that the Hospital was told by Dr. Brohm that he might have sleep apnea does not preclude summary judgment. The Sixth Circuit in *Maddox* specifically rejected this contention: "knowledge does not translate into evidence that [the disability] was the basis for the termination." 62 F.3d at 848. As one district court has noted:

302

[A]llowing mere knowledge of a disability to create a fact issue regarding ADA discrimination would be patently unfair to employers and allow disgruntled employees the option of "creating" an ADA claim by simply informing their employers about their disabilities.

*Den Hartog v. Wasatch Academy,* 909 F.Supp. 1393, 1405 (D.Utah 1995).

In summary, no employer is required to ignore the dangerous and patently unacceptable behavior of its employees simply because that employee has a disability. An employee may not "bootstrap his disease into the line of causation," as Dr. Brohm attempts to do here, by showing that the misconduct relied on by the employer would not have occurred "but for" the disability. *Sieflcen,* 65 F.3d at 666. Summary judgment is therefore appropriate for the Hospital on Dr. Brohm's disability discrimination claim.

■ Our disposition of the disability discrimination claim requires that Dr. Brohm's claim under the FMLA also fail. Dr. Brohm contents that the Hospital violated the FMLA by "refusing to grant [him] medical leave and to restore him to his position following such leave." The FMLA requires certain employers to grant up to twelve weeks of leave to eligible employees for treatment of a "serious health condition." 29 U.S.C. § 2612(a)(1)(D). Dr. Brohm's assertion, then, is that the Hospital was required to give him leave to treat his sleep apnea instead of firing him. Dr. Brohm's contention fails because, as we have shown, his September 1 termination was not unlawful.

Dr. Brohm attempts to avoid this result by arguing that "[i]f an employer can fire an employee so as not to have to give them twelve weeks of entitled leave, it would defeat the entire purpose of the FMLA." Pl.'s response at 11. In this case, Dr. Brohm never requested medical leave during the time of his employment. Dr. Brohm was fired on the morning of September 1. Anything thereafter is immaterial. An ex-employee simply does not have a claim for leave after he has been terminated.

For the foregoing reasons, the motion of the defendant, JH Properties, Inc. d/b/a Jewish Hospital Shelbyville, for summary judgment will be granted.

An order in accordance with this memorandum opinion will be entered this date.